

OCT 30 2022 04:34
FILED-USDC-CT-NEW HAVEN

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*        *(203)821-3700*
*157 Church Street, 25ᵗʰ Floor*        *Fax (203) 773-5376*
*New Haven, Connecticut 06510*        *www.justice.gov/usao/ct*

October 3Q 2023

Robert E. Berke, Esq.
Law Office of Robert Berke, LLC
40 Clinton Avenue
Bridgeport, Connecticut 06605

>    Re:    *United States v. Erin Sullivan*
>           Case No. 3:23 CR _I 8 8_  (KAD) (MEG)

Dear Attorney Berke:

This letter confirms the plea agreement between your client, Ms. Erin Sullivan (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, the defendant agrees to waive her right to be indicted and plead guilty to a two-count Information charging her in Count One of the Information with a violation of 18 U.S.C. § 1343 (wire fraud) and in Count Two of the Information with a violation of 26 U.S.C. § 7201 (tax evasion).

The defendant understands that to be guilty of the offense charged in Count One, the following essential elements must be satisfied:

1.     That the defendant devised a scheme to defraud or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises;

2.     That the defendant acted knowingly and with the intent to defraud; and

3.     That in executing, furthering, or carrying out the scheme, the defendant transmitted or caused to be transmitted a writing, sign, signal, picture, or sound by means of a wire communication in interstate commerce, here the transfer of funds via the banking system from the victim entity's bank accounts at Bank of America to the defendant's bank accounts at Bank of America (account ending in x-8117 and

account ending in x-8120), Merrill Lynch (account ending in x-4R01), and Connex Credit Union (account ending in x-5565-20).

The defendant understands that to be guilty of the offense charged in Count Two, the following essential elements must be satisfied:

1. A substantial income tax was due from the defendant for the 2019 calendar year;

2. The defendant engaged in an affirmative act to evade or defeat that tax, as charged in the Information; and

3. The defendant acted willfully, that is, with the specific intent to violate a known legal duty.

## THE PENALTIES

### Imprisonment

The offense of wire fraud, as charged in Count One, carries a maximum penalty of 20 years of imprisonment.

The offense of tax evasion, as charged in Count Two, carries a maximum penalty of five (5) years of imprisonment.

### Supervised Release

For Count One and Count Two, in addition to any period of imprisonment, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should she violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to two years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

The offense of wire fraud under 18 U.S.C. § 1343 carries a maximum fine of $250,000. The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense, which gain is calculated to be $955,960.71; (2) twice the gross loss resulting from the offense, which loss is calculated to be $955,960.71; or (3) $250,000. The parties calculate that the gross loss resulting from the wire fraud offense charged in Count One of the Information is $955,960.71. Accordingly, twice that gross loss amount is $1,911,921.42.

The offense of tax evasion carries a maximum fine of $100,000. The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offence, which is $100,000. The parties calculate the gross loss resulting from the tax evasion charged in Count Two of the Information for representative tax year 2019 to be $64,450. Accordingly, twice that gross loss amount is $128,900.

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 for each count of conviction, for a total of $200. The defendant agrees to pay the special assessment on or before the date of sentencing unless she establishes an inability to pay on or before the date of sentencing through the financial disclosure to the U.S. Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

Restitution

In addition to the other penalties provided by law, the Court also must order that the defendant make restitution under 18 U.S.C. § 3663A for Count One and the Court may order that the defendant make restitution under 18 U.S.C. § 3663(a)(3) for Count Two, and the Government reserves its right to seek restitution on behalf of the victim entity consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution to the victim entity in the amount of $315,960.71, which represents the amount of loss suffered by the victim entity that still is outstanding.[1] The Government agrees that it will provide the Court the amount of the expenses incurred by the victim for forensic accounting and legal services incurred during participation in the investigation and prosecution of the offense, with the final determination as to whether any such expenses are included in restitution to be made by the Court. *See* 18 U.S.C. § 3664A(b)(4).[2] The parties further agree that they will request that the Court order that the making of all such restitution payments be made a special condition of any Court-imposed period of supervised release.

---

1 The loss incurred by the defendant's criminal conduct has been calculated to be $955,960.71. The parties agree and acknowledge that after the discovery of the fraud by the victim entity, the defendant began to make and did make restitution payments to the entity as partial restitution and, as of the date of this agreement, the defendant has made two payments of $320,000 each, for a total of $640,000. The source of funds used for these payments were the defendant's father and her aunt. Accordingly, the outstanding restitution due as a result of the fraud is calculated as $315,960.71. This restitution figure does not include expenses incurred by the victim company for forensic accounting and legal services undertaken in connection with the discovery and prosecution of the criminal fraud matter.

2 *See Lagos v. United States*, 138 S. Ct. 1684, 1687-88 (2018).

The defendant further agrees that the Court should order restitution due to the Internal Revenue Service ("IRS") for the tax evasion offense and all relevant conduct. *See* 18 U.S.C. § 3663(a)(3). The Government has calculated the restitution due to the IRS to be $217,029 as follows: $25,851 for the Tax Year 2017; $23,926 for the Tax Year 2018; $64,450 for the Tax Year 2019; $44,385 for the Tax Year 2020; and $58,417 for the Tax Year 2021. The defendant agrees that she will sign the IRS forms deemed necessary by the IRS to enable it to make assessment of the criminal restitution, including agreeing to sign IRS Form 8821, "Tax Information Authorization." The defendant further agrees to allow the contents of her IRS criminal file to be given to civil attorneys and support staff of the United States Attorney's Office and to the IRS to enable them to investigate any taxes owed by the defendant, including, but not limited to, any civil penalties and interest. With respect to disclosure of the criminal file to the above-listed individuals and entities, the defendant waives any rights the defendant might hold under 26 U.S.C. §§ 6103, 7213, and Fed. R. Crim. P. 6(e). The defendant further waives any other rights she might have to non-disclosure of tax-related information. The defendant agrees as a special condition of probation or supervised release that she will cooperate with the IRS to pay all outstanding taxes, interest, and penalties. Finally, the defendant agrees that she will sign the Waiver of Restrictions on Assessment and Collection of Deficiency in Tax (Form 870) as calculated in the Revenue Agent's Report (Form 4549A) at or before sentencing, setting forth the defendant's civil tax liability for the years at issue.

The Government acknowledges and agrees that pursuant to 18 U.S.C. § 3664(i), the District Court will ensure that the victim entity of the wire fraud offense will receive full restitution before the United States receives any restitution. However, if the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of probation or supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. 26 U.S.C. § 6201(a)(4)(C). The defendant understands that neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

### Interest, penalties, and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the

Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

<u>Acceptance of Responsibility</u>

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by: (1) truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which: (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

<u>Stipulation</u>

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics

that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

### Guidelines Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

Counts One and Two are grouped as closely related counts pursuant to U.S.S.G. § 3D1.2(d). *See United States v. Gordon,* 291 F.3d 181, 192 (2d Cir. 2002) (holding that "the offenses of fraud and tax evasion should be grouped under § 3D1.2(d)"). The fraud guideline (U.S.S.G. § 2B1.1) is used because it produces a higher offense level than the guideline for the tax offense (U.S.S.G. § 2T1.1). *See* U.S.S.G. § 3D1.3(b). The defendant's base offense level under U.S.S.G. § 2B1.1(a)(1) is 7. That level is increased by 14 because the reasonably foreseeable loss caused by the defendant in both the fraud offense and the tax evasion offense, collectively, was more than $550,000 but less than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H); U.S.S.G. § 3D1.3(b) (requiring use of "aggregated quantity").[3] Additionally, 2 levels are added because the defendant, as the Office Manager with control over the accounting software, abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense, pursuant to U.S.S.G. § 3B1.3. *See* U.S.S.G. § 3B1.3 Appl. Notes. 1 and 4. The resulting relevant adjusted offense level is 23. Furthermore, 3 levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 20.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level of 20, assuming placement in Criminal History Category I, would result in a range of 33 to 41 months of imprisonment (sentencing table) and a fine range of $15,000 to $150,000 (U.S.S.G. § 5E1.2(c)(3)). To the extent the Guidelines amendment regarding zero criminal history points applies after November 1, 2023, the defendant would be entitled to an additional two-level reduction, resulting in a total offense level of 18. A total offense level of 18, assuming placement in Criminal History Category I, would result in a Guidelines range of 27 to 33 months of imprisonment (sentencing table) and a fine range of $10,000 to $100,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant also is subject to a Guidelines term of supervised release 1 year to 3 years. U.S.S.G. § 5D1.2.

---

[3]    The loss includes the $955,960.71 loss to the victim entity of the wire fraud scheme and the $233,738 loss from the defendant's tax evasion for the years 2016 through 2021.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.[4]

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that she will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

Both parties reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that she is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Right to Indictment

The defendant understands that she has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that she committed the offenses set forth in the information before an indictment could be returned. The defendant acknowledges that she is waiving her right to be indicted.

---

[4]   Specifically, the defendant reserves her right to argue that the agreed-upon Guidelines calculation overstates the amount of loss because, while the total loss suffered by the victim is correctly calculated at $955,960.71, after the discovery of the fraud by the victim company, the defendant made partial restitution payments totaling $640,000 prior to the entry of the guilty plea. Accordingly, the defendant will argue that that the effective loss should be limited to the remaining $315,960 loss suffered by the victim entity taken together with the $233,738 of tax loss for tax years 2016 through 2021, resulting in a total adjusted loss remaining of $549,698. Thus, she will argue that the loss should be reduced by two levels. The Government acknowledges the payments already made of $640,000, but opposes a departure on this ground and asserts that the defendant effectively is advancing a § 3553(a) argument as to her remorse and contrition, but not a reason for the Court to grant a Guidelines departure.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction. By pleading guilty, the defendant waives her right to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims she might raise, the defendant waives her right to challenge her conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, she is entitled to challenge her sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a

motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence does not exceed 33 months of imprisonment, a three-year term of supervised release, a $200 special assessment, a fine of $15,000, and restitution in the amount of $532,989, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the defendant will not challenge any condition of supervised release imposed by the Court for which she had notice and an opportunity to object. The Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to an aggravated felony with the loss over $10,000, removal would be presumptively mandatory if the defendant were not a U.S. citizen. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that she is bound by her guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to her guilty plea and to her sentence based on those consequences and agrees not to seek to withdraw her guilty plea, or to file a direct appeal or any kind of collateral attack challenging her guilty plea, conviction, or sentence, based on the immigration consequences of her guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of

the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that she is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the counts of conviction or any of the other counts that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights she may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and may thereby be deprived of certain federal benefits as provided in 21 U.S.C. § 862 and may be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if she is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons, or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in the criminal conduct that forms the basis of the information in this case and the stipulation of offense conduct and relevant conduct in this case.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw her guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel, and that she fully understands and accepts its terms.

ERIN SULLIVAN
The Defendant

Date  10/30/23

I have thoroughly read, reviewed, and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

ROBERT E. BERKE, Esq.
Attorney for the Defendant

Date  10/30/23

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to Count One of the Information charging her with a violation of 18 U.S.C. § 1343 (wire fraud) and Count Two of the Information charging her with a violation of 26 U.S.C. § 7201 (tax evasion).

At all times relevant to the offense conduct and relevant conduct agreed to herein, defendant Erin Sullivan, was a resident of the State of Connecticut.

### Count One

From approximately August 2013 to June 14, 2022 (the date of the defendant's termination), the defendant, Erin Sullivan, was an employee of the victim company, which was a small family-owned business located in Orange Connecticut, at which she held the title and position of Office Manager. The victim company had and utilized, as with most businesses of its type, an accounting software system (namely, the Intuit QuickBooks system) through which it issued checks, managed payroll, and tracked expenses in various categories for bookkeeping and record keeping purposes. In the position of Office Manager, the defendant had access to and authority over the bookkeeping system for the victim company.

Beginning in or about January 2016 and continuing into at least the middle of 2022, the defendant, Erin Sullivan, knowingly devised and executed a scheme to defraud and to obtain money and property from the victim company by making false and fraudulent entries into the victim company's books and records in the QuickBooks system and fraudulently obtaining checks and additional monies. Over said period of time, Sullivan fraudulently took approximately 369 checks. Sullivan's embezzlement activity increased in 2019 and 2020, in a period during which the victim company's owners experienced the death of a son in 2019 and of a husband and father in 2020, both of whom were affiliated with the family-owned victim company.

Among the false and fraudulent representations that the defendant used to effectuate the scheme were numerous instances where Sullivan used the QuickBooks system to generate fraudulent checks payable to her and/or payable to "Petty Cash" and then almost immediately after the checks were issued, she would edit the QuickBooks system and change the reference to the payee to a different false payee. By changing the reference in the QuickBooks system, Sullivan was able to conceal the fact that she was the true payee receiving the checks. Sullivan then would select a false expense category in the QuickBooks system, such as, for example, "Notes Payable," to conceal her fraudulent scheme. At times, Sullivan also would fraudulently change the date of the issued checks to further conceal her scheme.

After taking the fraudulent checks, Sullivan would deposit the embezzled checks into one of her personal accounts. Thereafter, to further conceal the scheme, Sullivan would fraudulently reconcile the account entries in QuickBooks, falsely indicating in the system that the embezzled checks, that had in reality been issued to her and which she had deposited, were issued to the false payee.

Additionally, as part of the scheme, Sullivan forged the signature of the victim company's owner on the embezzled checks and either cashed the checks or deposited the checks into her personal bank accounts. Moreover, as a further part of the scheme to defraud, Sullivan altered the payroll records, approximately 65 times, resulting in her receiving additional pay to which she was not entitled.

In execution of the scheme, Sullivan used and caused to be used the interstate wires of the banking system, by depositing checks into her accounts, including her account at Bank of America which clears checks via interstate wires. For example, on or about May 26, 2022, Sullivan logged into QuickBooks and fraudulently generated check number 4724 by selecting the victim company's operating account, entering her name as the payee, and inputting the amount $2,441 as the check amount. She then selected–albeit falsely–the expense category of Notes Payable and printed the check. Then, on the same day, in order to conceal her fraudulent activity, Sullivan edited the name of the payee in the system to the name of the owner. Three days later, on May 29, 2022, Sullivan deposited check number 4724 into her Bank of America checking account (account number ending in 8117) via mobile deposit.

Thereafter, on June 2, 2022, Sullivan logged into the QuickBooks system and conducted a "month end reconciliation" of the victim company's bank account in which she fraudulently indicated that check number 4724 was payable to the owner, when, in fact, the check was actually payable to Sullivan and had been deposited by her for her benefit into her account at Bank of America.

## Count Two

Additionally, to conceal the existence of the scheme to defraud and to prevent the discovery of the source of funds, Sullivan, a resident of Connecticut, who filed her federal income taxes from the State of Connecticut, willfully filed false personal income tax returns for the years 2016 through 2021 in that she willfully failed to report substantial income, including the fraudulently obtained income, on her federal income tax returns and took affirmative acts to evade and defeat her federal tax obligation that was due and owing. The tax year 2019 is the representative tax year charged in Count Two.

During the course of the scheme, 2016 through 2022, Sullivan did not properly report the fraudulently obtained funds to the IRS as income and those funds should have been reported. In total, Sullivan took in $955,960.71 through execution of the scheme charged in Count One and for tax years 2016 through 2021, failed to report approximately $776,613. Accordingly, Sullivan willfully evaded and defeated the United States out of a substantial amount of federal income tax, that is, $233,738, in federal income tax for tax years 2016 through 2021. Specifically, for 2019, the defendant willfully failed to report $203,710 resulting in tax evaded and defeated in the amount of $64,450.

As reflected in bank records for the years 2016 through 2022, Sullivan had a pattern of unreported income that spanned the entire period from 2016 through 2022. As reflected in the bank records, during the years of 2016 through 2021 Sullivan omitted income as follows: for 2016, $57,064; for 2017, $91,773; for 2018, $81,171; for 2019, $203,710; for 2020, $151,396; and for 2021, $191,500 in taxable income.

This conduct resulted in additional tax due and owing by Sullivan for each respective year, as follows: for 2016, $16,709; for 2017, $25,851; for 2018, $23,926; for 2019, $64,450; for 2020, $44,385; and for 2021, $58,417.

Sullivan committed the following affirmative acts, among others, to evade and defeat her personal income tax obligation for 2016 through 2021:

(1)     Sullivan utilized her access to the QuickBooks system to generate fraudulent checks payable to herself and to petty cash and then edited the QuickBooks system to hide the true payees.

(2)     Sullivan forged the victim company's owner's signature on certain checks, and either cashed the checks or deposited the checks into her personal bank accounts.

(3)     Sullivan attempted to conceal her embezzled income by cashing approximately $601,010 in diverted checks during the years 2016 through 2022 and utilizing a large portion of that cash to pay her personal credit card bills.

(4)     Sullivan intentionally and repeatedly failed to provide her tax return preparer with information and documentation showing her unreported income. Specifically, she did not provide her preparer with her bank account statements, which would have shown a significant amount of the proceeds that she had diverted from the victim company and deposited into her accounts.

(5)     Sullivan knowingly filed a false Form 1040, personal income tax return, for each of the years at issue, 2016 through 2021, in which she intentionally understated her taxable income by a total of $776,613 by not reporting a substantial amount of the embezzled income that she knew she had received.

(6)     On or about June 2, 2022, SULLIVAN applied for a Bank of America Visa card and, on the application, she indicated that her total annual income was $288,888. However, she only reported a total income of $83,123 on her 2021 tax return that was filed with the IRS. According to an analysis of her financial records, her total income in 2021, including the embezzled funds, was approximately $274,623, of which approximately $191,500 was not reported.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

ERIN SULLIVAN
The Defendant

MICHAEL S. McGARRY
Assistant United States Attorney

ROBERT E. BERKE, Esq.
Attorney for the Defendant

## RIDER CONCERNING RESTITUTION

The Court shall (as to Count One) order that the defendant make restitution under 18 U.S.C. § 3663A, and may (as to Count Two) order that the defendant make restitution under 18 U.S.C. § 3663(a)(3), as follows:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A.  Return the property to the owner of the property or someone designated by the owner; or

    B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

        The greater of -
        (I) the value of the property on the date of the damage, loss, or destruction; or

        (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2.  In the case of an offense resulting in bodily injury to a victim –

    A.  Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B.  Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C.  Reimburse the victim for income lost by such victim as a result of such offense.

3.  In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

4.  In any case, reimburse the victim for lost income and necessary childcare, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution also may result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614.